THE SOUTHWESTERN RAILROAD COMPANY, plaintiff in error, *vs.* WILLIAM W. CHAPMAN, guardian, *et al.*, defendants in error.

Section 1794 of the Code, declaring that a natural guardian is not entitled to demand or receive the property of a minor, until he or she has given bond to the Ordinary, does not make such receipt illegal in such a sense, as that the person paying it cannot recover it back, or show that it has, in fact, been accounted for by the natural guardian to the ward, or applied to the benefit of the ward.

Where a bill in equity was filed by a railroad company, alleging that it had paid the dividends on certain shares of stock belonging to a minor to the mother of the minor, the father being dead; that the mother had appropriated the money paid to the necessary uses and expenses of the minor; that a guardian of the minor had been subsequently appointed who had brought suit against the railroad, and obtained a judgment for the dividends; that on the trial of the suit this defense of the company had been disallowed by the Court on the ground that it was not a good defense at law, since the mother was not a party to the suit; that final judgment had given a lien against the company in favor of the guardian, who was about to proceed to collect the money by execution; that the mother was insolvent, and that no accounting had been had between the guardian and the mother, for the expenditures for which this money was used. The bill prayed that the judgment at law might be enjoined, until an account should be taken, as to the amount due, from the ward's estate to the mother, for said expenditures, and that the amount, when found, should be applied to the judgment.

*Held,* That the Judge ought to have granted the injunction.

Equity. Injunction. Guardian and ward. Before Judge COLE. Bibb county. At Chambers. September 11th, 1872.

The Southwestern Railroad Company filed its bill against William W. Chapman, as guardian of Tallulah B. Chapman and Martha A. Chapman, containing, substantially, the following allegations: That said Tallulah B. Chapman is the owner of thirty-five shares of the capital stock of complainant; that after the death of her father, Ambrose Chapman, in the year 1866, and before any guardian was appointed for her person and property, the treasurer of complainant, without authority, paid a dividend on said stock amounting to $323 to Brad. Chapman, as the executor of the last will

and testament of said Ambrose Chapman, deceased, $180, of which said executor invested in two shares of the capital stock of complainant, and had the usual certificate issued in the name of the said Tallulah B. ; that afterwards and before the appointment of any legal guardian for the said Tallulah B., complainant's said treasurer paid to Martha A. Chapman, the mother of the said Tallulah B., three other dividends upon said thirty-seven shares of stock, amounting in the aggregate to $444; that at the time the said last mentioned dividends were respectively paid, the said Brad. Chapman had been removed from the executorship of said estate, and the said Martha A. Chapman had been appointed administratrix with the will annexed, and had in her hands the unadministered estate belonging almost entirely under said will to the said Tallulah B. ; that in the administration of said estate the said Martha A., charged herself with said dividends, and paid them out in the support, education and maintenance of the said Tallulah B., in the repair of property belonging under said will, to said Tallulah B., in taxes on the same, and in the expenses of administration ; that said Tallulah B., in this way, received the benefit of said dividends so paid as aforesaid ; that after the said dividends had been paid to the said Martha A., and after she had applied the same to the exclusive use and benefit of her said daughter, the defendant, William W. Chapman, obtained letters of guardianship for the person and property of the said Tallulah B., she being still an infant, and commenced suit against complainant for the dividends so paid as aforesaid to said Brad. F. Chapman, executor, and to the said Martha A. Chapman ; that complainant pleaded to said suit the facts heretofore set forth; that the plea was allowed as far as the $180 invested by said executor in the stock of complainant was concerned, and overruled as to the remainder of said dividends, the Superior and Supreme Courts holding that said suit being purely an action at law to which said Martha A. Chapman was no party, the equitable defense of complainant could not be allowed, and judgment was rendered against

complainant for the amount of the aforesaid dividends less $180; that complainant admits its liability for the amount received by said executor less the $180 aforesaid, which is $143, and is ready and willing to pay the same with the legal interest thereon; that the defendant, Martha A. Chapman, is insolvent, and declines to refund to complainant said dividends so paid to her as aforesaid, for the sole reason, that if she were compelled to refund to complainant the amount of the aforesaid dividends, she would be entitled to recover the same from the estate of the said Tallulah B. Prayer, that, in order that there may be an account had between the defendant, W. W. Chapman, guardian, and the defendant, Martha A. Chapman, as to the amount of said dividends applied to the use and benefit of the said Tallulah B., and complainant allowed the benefit thereof as against the judgment in favor of said defendant, William W. Chapman, as guardian, the writ of injunction may issue restraining the said defendant, Chapman, as guardian, from proceeding with the execution based upon said judgment until the further order of the Court; that the writ of subpœna may issue.

The Chancellor refused the injunction, and complainant excepted and assigns said ruling as error.

LYON & IRVIN, for plaintiff in error.

POE, HALL & POE, for defendants. 1st. Natural guardian cannot receive property of child until bond is filed: Code, sec. 1794. 2d. Equity will not afford relief to a party who has violated a statute: 1st Story's Eq. Jur. secs. 298–306: 3 Ga. R., 183; 5th, 413; 9th, 114; 11th, 245; Lord Bacon's General Orders, No. 6; 2 Camp. Lives of Chancellors, 348; 2d Bacon's Ab., p. 139.

McCAY, Judge.

Our Code, section 1794, provides "that the father of a minor, and if the father be dead, the mother is the natural guardian of the minor;" and it then adds, "the natural

The Southwestern Railroad Company *vs.* Chapman.

guardian cannot demand or receive the estate of the minor until he or she gives bond, approved by and to the Ordinary." Without doubt this is a wise and proper provision, and, without doubt, neither the father or mother of a minor can legally bind the ward by a receipt of the property until the bond be given as required by law. A receipt of the ward's money is, no doubt, by virtue of this provision illegal—that is, without authority—a payment to the natural guardian is no legal payment, and the person paying is still bound. All this is true, and in this sense such payment or receipt is illegal. It is just as illegal to pay money due a minor to his natural guardian who has not given bond as to pay it to any other unauthorized person. The payment, in either case, is without authority, not sanctioned or authorized by law. But it seems to me absurd to say that it is illegal in the sense that it is corrupt—contrary to public policy—a *violation* of law, so that the Courts will refuse to interfere between the parties engaged in the transaction under the maxim : " *In pari delicto, potior est conditio defendentis.*" It is, it is true, a well-settled rule that parties engaged in violating the law cannot call upon the Courts to aid them if either gets the advantage of the other. Money paid to compound a felony cannot be recovered back ; and, generally, a debt arising under any agreement which is, by law, a crime or contrary to good morals, or against the declared public policy of the State, cannot be recovered. These are familiar rules, and we have nothing to say against their existence or their wisdom. But it is, in our judgment, an utter perversion of the rules we have referred to, to apply them to such a case as this.

The payment of this money to the mother was in no sense corrupt or a crime, or contrary to good morals, or against public policy. It was simply unauthorized; the payment was no protection to the company. The mother had no authority to receive it. It stands precisely as if it had been paid to any other unauthorized person, and that is all. The law does not *prohibit* such a payment; it simply declares it

unauthorized. In announcing that the parent is the natural guardian, it qualifies his powers as a guardian by witholding from him the right to take possession of the minor's estate. If he does get possession, it seems to me the very height of absurdity to say that the person who lets him have it is guilty of such a violation of the law as that he has no *status* in a Court of justice; that he comes in as a law-breaker, and cannot be listened to. The strongest possible illustration of the wrong of such an application of this law is in this case. Here it appears, by the bill, that this payment was made in good faith, without any intent to do wrong, but with the purpose of honestly and fairly complying with the duty of the company. And yet it is asserted that the Courts of justice, in holy horror of conniving at a violation of law, will refuse to compel the mother, who has got this money without authority, to pay it back. If the rule has any application to this case, it must go as far as this; for if the money was *illegally* paid, in the sense of the rule which is relied on, it can no more be recovered back from Mrs. Chapman than it can in the method now insisted on by the plaintiff in error. The truth is, the present proceeding is only a proceeding to get the money back from Mrs. Chapman, and equity is resorted to, not because a Court of law would refuse to interfere against her, but because she is insolvent and has put the money to such use as that it is a proper charge in her favor against the estate of the minor. Having a right of action at law against Mrs. Chapman, and she having a right to compel the minor to account to her, the company asks to be subrogated to her rights against the minor, on the ground that, as she is insolvent, and as, in truth, the money she used for the necessities of the ward came from the company, it is only right that the ward should not be allowed again to get the money. It is inequitable that this minor shall twice get this money : once, through the hands of another, and now by a judgment. Minors are, it is true, favorites of the Courts, but, as it seems to me, even for these favorites, the Courts will not do such gross injustice.

Judgment reversed.

MONTGOMERY, Judge,'concurred, and referred to his opinion·in the case of the Southwestern Railroad Company *vs.* Chapman, guardian, on page 542.

WARNER, Chief Justice, dissenting.

This was a bill filed by the complainant against the defendants to enjoin the collection of a judgment obtained for certain described dividends on railroad stock, which was the property of the defendant's infant ward, and which, it is alleged, was paid by the complainant to the mother and natural guardian of the infant, and which had been used and appropriated for the benefit of the ward. There is no sufficient excuse or reason stated why this bill was not filed when the action in which the judgment was rendered was pending in the common law Court, if, indeed, the complainant was entitled to the relief now sought. But, in my judgment, the complainant is not entitled to the relief prayed for. The dividends of the stock was the property of the infant ward. The mother, to whom the complainants paid them, was her natural guardian. The 1794th section of the Code declares, that the natural guardian cannot demand or *receive* the property of the child until a guardian's bond is filed and accepted by the Ordinary, which it is not pretended was done in this case. This provision of the Code is a wise one, and was intended for the protection of infants, and a Court of equity has no more power or authority to disregard and violate the provisions of a positive statute than a Court of law, or to grant any relief to a party who has violated it. From what source does a Court of equity derive its power and authority to dispense with and disregard the provisions of a positive statute? A positive statute, when enacted in pursuance of the Constitution, prescribes a rule of conduct for the government of Courts of equity as well as Courts of law, no matter what abstract notions of justice the Courts may entertain of the cases controlled by it. If it were otherwise, the rights of the citizen would be entirely dependent upon the Judge's notions of abstract equity, instead of the positive law prescribed

by the supreme power of the State, for their government. The complainant having paid the dividends in violation of the provisions of a positive statute, and in violation of the public policy of the State, as manifested by that statute, a Court of equity cannot grant the relief prayed for any more than a Court of law could have done.